```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

------------------------------x
                              :
WINFERD B.                    :   Civ. No. 3:20CV00306(SALM)
                              :
v.                            :
                              :
ANDREW M. SAUL,               :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :   March 2, 2021
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Winferd B. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI"). Plaintiff has moved to reverse the Commissioner's decision, or in the alternative, to remand for a re-hearing. [Doc. #17]. Defendant has filed a motion for an order affirming the decision of the Commissioner. [Doc. #22].

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner [**Doc. #17**] is GRANTED, to the extent that it seeks remand for further proceedings, and defendant's Motion for an Order Affirming the Commissioner's Decision [**Doc. #22**] is DENIED.

1

I.      **PROCEDURAL HISTORY**[1]

On April 18, 2017, plaintiff filed an application for disability insurance benefits ("DIB") and SSI, alleging disability beginning on January 1, 1999. See Tr. 363-74. Plaintiff's applications were denied initially on September 28, 2017, see Tr. 228-29, and upon reconsideration on January 29, 2018. See Tr. 264-65. Prior to the administrative hearing, plaintiff withdrew his claim for DIB and amended his alleged disability onset date to March 31, 2017. See Tr. 119.

On December 6, 2018, Administrative Law Judge ("ALJ") Eskunder Boyd held a hearing at which plaintiff appeared with attorney Mark Weaver and testified. See Tr. 114-61. Vocational Expert ("VE") Susan Howard appeared and testified by telephone. See Tr. 114, 149-60, 513. On December 20, 2018, ALJ Boyd issued an unfavorable ruling. See Tr. 16-37. On January 30, 2020, the Appeals Council denied review, thereby rendering ALJ Boyd's decision the final decision of the Commissioner. See Tr. 1-7. The case is now ripe for review under 42 U.S.C. §405(g).

---

[1] On September 17, 2020, plaintiff filed an Amended Statement of Material Facts. See Doc. #19. Defendant filed a Responsive Statement of Facts on November 6, 2020, see Doc. #22-2, substantially adopting plaintiff's statement of facts with some "additional facts[.]" Id. at 1.

2

## II.  STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt

whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

In reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

**III. SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

5

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If she is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

> Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be

7

broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV. THE ALJ'S DECISION

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from March 31, 2017, through" December 20, 2018. Tr. 30.

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since March 31, 2017, the alleged onset date" of his disability. Tr. 21.

At step two, the ALJ determined that plaintiff had the following severe impairments: "L5-S1 facet arthropathy, diabetes, post-traumatic stress disorder, and polysubstance addiction disorder." Tr. 21.

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 22. The ALJ specifically considered listings 1.04 (disorders of the spine), 9.00 (endocrine disorders), and 12.15 (trauma and stress related disorders). See Tr. 22-23. Regarding plaintiff's facet arthropathy,[2] the ALJ found:

---

[2] "Facet arthropathy is a form of degenerative disease affecting the joints that connect the vertebrae in the posterior spine." Kessler v. Colvin, 48 F. Supp. 3d 578, 586 n.6 (S.D.N.Y. 2014).

8

> The severity of the claimant's condition has not met or medically equaled the requirements of listing 1.04A because the evidence of record does not show evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflect loss, and, if the lower back is involved, positive sitting and supine straight leg raising test.

Tr. 22. The ALJ also evaluated plaintiff's diabetes under Social Security Ruling ("SSR") 14-2p. See Tr. 22.

The ALJ next found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and walk for up to 4 hours and sit for 6 hours; can sit for up to an hour, alternate to the standing position for 5 minutes, then resume sitting; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, and crouch and never kneel or crawl; can never reach overhead with his right upper extremity; can frequently handle and finger; can do not work in exposure to heat; can never be exposed to concentrated exposure to dust or other pulmonary irritants; can perform simple, routine, repetitive tasks; can sustain concentration, persistence, and pace for 2-hour segments; can have brief and superficial interaction with co-workers; can have brief interaction with supervisors; can have no interaction with the public; can perform work with little or no changes in duties or routines; can do no work that requires independent judgment, such as setting duties or schedules for others or being responsible for the safety of others.

Tr. 24 (sic).

At step four, the ALJ concluded that plaintiff "has no past relevant work[.]" Tr. 28.

At step five, after considering plaintiff's "age, education, work experience, and" RFC, the ALJ found that "there are jobs that exist in significant numbers in the national

9

economy that the claimant can perform[.]" Tr. 29. Specifically, the ALJ accepted the VE's testimony that plaintiff could perform the following jobs: "bench assembler, DOT 706.684-042, with 30,000 positions nationally; assembler, dry and cell battery, DOT 727.687-022, with 18,000 positions nationally; and nut chopper, DOT 521.686-046, with 16,000 positions nationally." Tr. 29.

## V.   DISCUSSION

Plaintiff moves to reverse the decision of the Commissioner or for a remand for further proceedings. See Doc. #17. Plaintiff contends that the ALJ erred by denying his application for SSI, and makes the following arguments:

1) The ALJ failed to develop the record. See Doc. #17-2 at 8-13.
2) The ALJ's RFC determination was flawed. See id. at 13-16.
3) The Commissioner did not meet his burden of proof at step five. See id. at 16-19.

Plaintiff's arguments that the ALJ failed to develop the record and that the RFC was incomplete both relate, in part, to his use of a cane to ambulate. See id. at 12, 15-16. The ALJ's analysis of plaintiff's use of a cane is limited to a single sentence of the decision: "[T]hough the claimant uses a cane, it was not prescribed by his doctor, and, moreover, the claimant also showed the ability to walk normally without use of the

10

cane." Tr. 26. Notably, no records are cited in support of this contention. In fact, and contrary to the ALJ's assertion, the record reveals that a cane was prescribed for plaintiff on three occasions. See Tr. 723, 2059, 2551. The ALJ therefore made a factual error regarding plaintiff's cane. Because this error was not harmless, the Court remands this matter for further proceedings. The Court does not reach the merits of plaintiff's other arguments.

Plaintiff argues that the ALJ erred in two respects in consideration of his use of a cane. First, plaintiff contends that the ALJ failed to develop the record because "the ALJ should ... have requested clarification from [plaintiff's] primary care provider regarding his medical requirement for a cane." Doc. #17-2 at 12. Second, plaintiff argues that the RFC should have incorporated a restriction reflecting that plaintiff's cane is medically required. See id. at 15. The Commissioner asserts that the ALJ "found that there was no evidence to support the need for a cane[,]" and "Plaintiff has not established that he is more limited in ambulation than the ALJ found." Doc. #22-1 at 8.

At the hearing, plaintiff testified that he had been using a cane for "a couple of years now[,]" and that the cane "takes a lot of pressure off my knees and my, my foot because I have

11

severe neuropathy."[3] Tr. 123-24 (sic). When asked whether his cane was prescribed, plaintiff responded, "[y]es." Tr. 124.

The ALJ stated in his ruling:

> The undersigned notes that none of the records show loss of ambulation, such that the claimant could not stand or walk to the extent of the residual functional capacity. Further, <u>though the claimant uses a cane, it was not prescribed by his doctor</u>, and, moreover, the claimant also showed the ability to walk normally without use of the cane.

Tr. 26 (emphasis added). The ALJ determined that plaintiff had the RFC to "stand and walk for up to 4 hours and sit for 6 hours[.]" Tr. 24. The RFC does not incorporate use of a cane. <u>See</u> Tr. 24.

The ALJ erred by concluding that plaintiff's cane "was not prescribed by his doctor[.]" Tr. 26. In fact, the record shows that plaintiff was prescribed a cane on <u>three</u> separate occasions.

<u>First</u>, a progress note from the plaintiff's visit to the Community Health Center in Meriden on May 5, 2014, notes that plaintiff was "in pain – limping – would like to get back brace and cane." Tr. 723. Further down the page the progress note confirms that a "cane rx" was given, Tr. 723, indicating that

---

[3] "Diabetic neuropathy refers to nerve damage that may result as a long-term complication from diabetes. This can result in sudden or gradual weakness of a leg, reduced sensations, tingling, pain in the hands and feet, or chronic nerve damage." <u>Molina v. Apfel</u>, 43 F. Supp. 2d 192, 198 n.6 (D. Conn. 1999).

12

the provider prescribed plaintiff a cane during that visit. Plaintiff alleges disability beginning on March 31, 2017, see Doc. #17-2 at 2; therefore, this prescription predates the relevant time period. Medical evidence that predates the alleged disability onset date "can have some probative value[.]" Velez v. Colvin, No. 3:13CV00171(JGM), 2016 WL 884635, at *5 (D. Conn. Mar. 8, 2016); see also Davis v. Saul, No. 7:19CV002974(JCM), 2020 WL 2094096, at *11 (S.D.N.Y. May 1, 2020) (Records that "predate the alleged onset date ... may still be relevant, and should [be] considered."); Petrie v. Astrue, No. 5:08CV01289(GLS)(VEB), 2009 WL 6084277, at *7 n.7 (N.D.N.Y. Nov. 10, 2009), report and recommendation adopted, 2010 WL 1063836 (N.D.N.Y. Mar. 19, 2010), aff'd, 412 F. App'x 401 (2d Cir. 2011) (While the "focus on inquiry must be on the actual period of disability at issue[,]" evidence that predates the disability onset date "may have some relevance[.]"). Here, the May 2014 record is relevant because it contradicts the ALJ's finding that plaintiff's cane "was not prescribed by his doctor[.]" Tr. 26. Moreover, the May 2014 record is "consistent with the subsequent, post-onset date medical record[,]" McKern v. Comm'r, No. 1:17CV00944(HBS), 2019 WL 289881, at *3 (W.D.N.Y. Jan. 23, 2019), which contains two additional cane prescriptions, see Tr. 2059, 2551, and repeatedly references plaintiff's cane use. See, e.g., Tr. 103, 2105, 2223, 2541.

13

Second, plaintiff was prescribed a cane on August 1, 2017, by "Jeuse Saint-Fleur APRN[,]" who saw plaintiff at Cornell Scott-Hill Health Center. Tr. 2059. Treatment notes from plaintiff's visit state: "pt states of needing med. refill, including: asthma pump and needs new cane[,]" Tr. 2056, and "unsteady gait and limping, no cane today 'he lost it[.]'" Tr. 2058. A cane is then listed as a "Medication[] Added to Medication List this Visit[,]" and there is a record of the cane prescription entered by APRN Saint-Fleur. Tr. 2059.

Third, plaintiff was again prescribed a cane on November 6, 2017. See Tr. 2551. Treatment notes from Cornell Scott-Hill Health Center on that date include a prescription for a cane, entered and signed by APRN Saint-Fleur. See Tr. 2551. In sum, while the ALJ expressly stated that plaintiff's cane was not prescribed, see Tr. 26, the record contains three prescriptions for a cane.[4] See Tr. 723, 2059, 2551.

The only evidence the Court finds in the record to support the ALJ's statement regarding plaintiff's cane use is a comment made by Dr. Yacov Kogan in his consultative examination report. Dr. Kogan examined plaintiff on September 14, 2017, and observed: "Without his cane, [plaintiff] ambulates independently

---

[4] In addition, plaintiff's treatment notes from September 2017 through December 2018 consistently include a cane in plaintiff's list of "current medications." See Tr. 89, 112, 2035, 2048, 2543, 2557, 2651, 2670, 2705, 2730.

14

with normal bilateral step length, speed and stride without antalgia, plegia, ataxia or instability." Tr. 2536. While the ALJ found Dr. Kogan's report persuasive, he did not specifically address Dr. Kogan's comments about plaintiff's ambulation in his discussion of the report. See Tr. 27-28. In addition, nothing in Dr. Kogan's report indicates that he received or reviewed plaintiff's medical record. See Mauro King v. Berryhill, 251 F. Supp. 3d 438, 444 (N.D.N.Y. 2017) ("A consultative examiner's opinion may not constitute substantial evidence where the consultative examiner is not provided the plaintiff's treatment record or diagnostic studies, i.e., the necessary background information.").

Regardless of whether the ALJ relied upon Dr. Kogan's comment, or whether Dr. Kogan reviewed plaintiff's medical record, the record before the ALJ contained three prescriptions for a cane. See Tr. 723, 2059, 2551. Thus, the ALJ's conclusion that plaintiff's cane was not prescribed was plainly erroneous, and based on a misreading of the record.

The ALJ's error was not harmless. As discussed, plaintiff's RFC did not include the use of a cane to ambulate. See Tr. 24. During the hearing, the vocational expert testified that, had the RFC included the use of a cane to ambulate, plaintiff would be unable to work. See Tr. 150-58.

The ALJ presented two different hypothetical RFCs to the VE, and asked her to determine whether there were jobs in the national economy that a person with each hypothetical RFC could perform. See Tr. 150-54. The first hypothetical RFC assumed a person with the plaintiff's age, education, and vocational background, who could perform light work with the following limitations:

> the individual may never climb ladders, ropes or scaffolds, occasionally climb stairs and ramps; occasionally balance, stoop, and crouch but never kneel or crawl; no overhead reaching with the right upper extremity; frequently handle and finger; no work and exposure to heat[,]

and may have "[n]o work and exposure to dust as a pulmonary irritant." Tr. 150. The hypothetical person "can perform simple, routine, repetitive tasks; can sustain concentration, pace and persistence for two-hour segments. The individual can have brief and superficial interaction with coworkers[,]" brief interaction with supervisors, and "no interaction with the public." Tr. 150-51. Further, "[t]he individual requires work with little to no changes in duties or routines, and no work requiring independent judgment-making, ... no setting duties or schedules for others." Tr. 151.

The VE identified three jobs that a person with that hypothetical RFC could perform: folding machine operator, linen

16

grader, and coffee grinder. See Tr. 152-53. The ALJ then asked the VE:

> [Y]ou identified folding machine operator, liner grader, and coffee grinder. Adding on to that within – as another limitation, use of cane for ambulation without necessarily dropping the stand/walk time, how would that impact folding machine operator, linen grader and coffee grinder?

Tr. 158 (sic). The VE responded: "I think it would preclude those jobs." Tr. 158.

The second hypothetical posed by the ALJ incorporated the limitations in plaintiff's RFC. Compare Tr. 24, with Tr. 153-56. The VE identified three jobs that a person with plaintiff's RFC could perform: bench assembler, assembler, dry and cell battery, and nut chopper. See Tr. 156. The ALJ asked: "[I]f I were to ask you to also throw in use of a cane for ambulation, how would that impact or would that eliminate or further reduce the number of" those jobs? Tr. 157. The VE replied: "I think it would eliminate the jobs in a production environment unless they were sedentary production jobs." Tr. 157.

Therefore, if plaintiff required a cane to ambulate, he would not be able to perform any of the six jobs identified by the VE in response to both hypotheticals, and the Commissioner would not have met his burden at step five. See Gonzalez ex rel. Guzman, 360 F. App'x at 243 (At step five, "the Commissioner is obligated to demonstrate that jobs exist in the national or

local economies that the claimant can perform given his residual functional capacity.").

In a similar case out of the Southern District of Texas, the Court remanded for a new hearing where the RFC did not include the use of a cane even though the record was "replete with evidence that Plaintiff requires, and regularly uses, an assistive device." Temple v. Saul, No. 4:19CV03320(DHP), 2020 WL 6075644, at *3-4 (S.D. Tex. Oct. 14, 2020). The Court held: "Given the ALJ's failure to include an assistive device in the RFC or explain the reason for not including it, this Court must conclude that the ALJ's decision is not supported by substantial evidence." Id. at 4. Here, while the ALJ briefly explained his decision to not include a cane in the RFC, see Tr. 26, his explanation was premised upon a significant factual error: that plaintiff's cane was not prescribed. Accordingly, the ALJ's reasoning for omitting a cane from the RFC was flawed, and the Court "cannot say that [his decision] is supported by substantial evidence." Horan v. Astrue, 350 F. App'x 483, 485 (2d Cir. 2009) ("[B]ecause the ALJ's credibility determination was based on a number of factual errors, we ... REMAND the case for further administrative proceedings consistent with this opinion."); see also Rivera v. Astrue, No. 1:10CV04324(RJD), 2012 WL 3614323, at *9 (E.D.N.Y. Aug. 21, 2012) ("The ALJ's opinion in this case is marred by errors, both legal and

factual. ... As a result, the Court is unable to determine whether the ALJ's decision is supported by 'substantial evidence,' and remand is appropriate."). Therefore, remand is required.

## VI. CONCLUSION

For the reasons set forth herein, plaintiff's Motion to Reverse or Remand [**Doc. #17**] is GRANTED, to the extent that it seeks remand for further proceedings, and defendant's Motion for an Order Affirming the Commissioner's Decision [**Doc. #22**] is DENIED.

This matter is hereby remanded for further administrative proceedings consistent with this ruling. The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand.

SO ORDERED at New Haven, Connecticut, this 2nd day of March, 2021.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE